# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADOLFO CHAVEZ III, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No.<br>) |
| v. | )<br>)<br>) JURY TRIAL DEMANDED |
| CLARUS GROUP, LLC and CERNER CORPORATION, | )<br>)<br>) |
| Defendants. | ) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Adolfo Chavez III ("Plaintiff"), individually and on behalf of all others similarly-situated, by and through his undersigned counsel, hereby makes the following allegations against Clarus Group, LLC ("Clarus") and Cerner Corporation ("Cerner") (collectively "Defendants") concerning her acts and status upon actual knowledge and concerning all other matters upon information, belief and the investigation of her counsel:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress common policies and practices by which Defendants, jointly and severally, suffered and permitted Plaintiff and other similarly-situated employees to work in excess of 40 hours per week without properly compensating them at an overtime premium rate for all of their overtime hours. Defendants' policies and practices violate the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* ("PMWA") by denying Defendants' employees overtime premium wages for overtime hours they actually work.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction," pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the FLSA and pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy in this civil action exceeds $75,000.00, exclusive of interest and costs, and the Parties are residents of different states.

3. This Court has supplemental jurisdiction over Plaintiff's PMWA claim pursuant to 28 U.S.C. § 1367 because this claim arises from the same occurrences and transactions as Plaintiff's FLSA claim (*i.e.,* Defendants' failure to pay overtime wages) and is so related to this claim as to form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendants conduct business within Pennsylvania, including within this District, Plaintiff worked for Defendants within this District and because the actions and omissions giving rise to the claims pled in this Complaint occurred within this District.

## THE PARTIES

5. Plaintiff is a resident of Placentia, California who worked for Defendants as an At-The-Elbow Clinical Support Specialist ("ATE") at the Penn State Health Milton S. Hershey Medical Center ("Hershey Medical Center") in the Commonwealth of Pennsylvania during the relevant period. Plaintiff is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint and has signed and filed a Consent Form to join this litigation. *See* Chavez Opt-In Form (Exhibit A).

Case 1:19-cv-00468-YK Document 21 Filed 03/14/19 Page 2 of 16

6. Defendant Clarus is a Kansas limited liability company with a principal place of business in Overland Park, Kansas. Clarus provides information technology support services to the healthcare industry in this District and nationwide. With respect to the claims pled in this action, Clarus's main function was to recruit and hire individuals to assist hospitals and healthcare organizations with the implementation and administration of an integrated health computer system.

7. Defendant Cerner is a Delaware corporation with a principal place of business in North Kansas City, Missouri. Cerner also provides information technology support services in the healthcare industry in this District and nationwide. With respect to the claims pled in this action, Cerner's main functions were to manage the day-to-day duties of individuals tasked to assist hospitals and healthcare organizations with the implementation and administration of an integrated health computer system and engage in recruiting.

8. Throughout the relevant period, Defendant Clarus and Defendant Cerner have jointly exercised operational control over the work done by ATEs, including: setting and implementing the work, timekeeping and compensation policies and practices at issue in this matter, providing training on these policies and procedures, tracking employees' hours worked and setting and paying employees' wages.

**BACKGROUND FACTS**

9. Plaintiff and the members of the proposed class and collective are individuals who have worked for Defendants as an ATE, or in any similarly-titled, hourly-paid position during the statutory period. Among other things, ATEs were all paid an hourly rate of pay, shared similar job titles, training, job descriptions and job tasks.

10. Defendants, in a combined effort, jointly recruited, placed and managed ATEs at various healthcare entities across the country for limited periods of time (usually a few weeks at a

3

time) where they assisted with the implementation and administration of integrated health computer systems.

11. Defendants, in a combined effort, jointly dictated, controlled and ratified all of the policies and practices relating to ATE work, timekeeping and compensation.

12. Defendants, in a combined effort, jointly encouraged, required and/or permitted ATEs to work more than 40 hours per week, only paid ATEs for billable hours (*i.e.* only ATE hours billed to a client) and did not pay ATEs for any hour they worked that was not billed to a client.

13. As part of Defendants' combined effort to recruit, place and manage ATEs, Defendant Clarus was typically responsible for, and did in fact:

  a. Recruit and hire ATEs, including ATEs, through personnel including Lindsey Johnson and Erica Voss;

  b. Oversee the verification of background screening for ATEs;

  c. Supply ATEs with project guideline documents that provided detailed information relating to each respective project;

  d. Arrange, approve and pay for ATE's flights, rental cars, hotels and parking;

  e. Issue paychecks to ATEs;

  f. Address issues relating to ATE compensation;

  g. Approve and maintain ATE time and expense reports;

  h. Provide ATEs with access to its accounting/HR team to resolve issues relating to Paylocity software, the system ATEs used to enter their time and expenses;

  i. Assist ATEs with time and expense reports through their accounting/HR team; and

  j. Maintain ATE records, including personnel files, through their accounting/HR department.

14. As part of Defendants' combined effort to recruit, place and manage ATEs, Defendant Cerner was typically responsible for, and did in fact:

    a. Conduct orientation and on-boarding activities for ATEs;

    b. Determine ATE work schedules;

    c. Approve any ATE schedule changes;

    d. Instruct and enforce the required dress code for ATEs;

    e. Resolve issues regarding transportation schedules for ATEs;

    f. Resolve requests to transfer ATEs from a different (i.e. "quiet") area to a busier one.

    g. Conduct calls and meetings with ATEs for various reasons relating to each respective project; and,

    h. Review, update and circulate transportation schedules and approve of alternative forms of transportation for ATEs;

15. Defendants assigned ATEs to Project Managers, or Team Leads, who served as their first point of management contact. For example, Plaintiff's Team Lead was Taylor McLaughlin. Other Cerner management personnel included Dimitri Reese. Defendants required ATEs to report to, communicate with, and respond to any requests from their Team Leads and other Cerner management personnel and direct questions to them as needed. Defendants expected ATEs to complete any duties assigned to them by their Team Leads or other Cerner management personnel during the course of the project.

16. Defendants required all ATEs to remain on campus until their scheduled shift concluded unless they received prior approval from their Team Leads or other Cerner management personnel.

17. Defendants required all ATEs to notify their Team Leads or other Cerner management personnel if they expected to be late or could not work their shift. Team Leads and

other Cerner management personnel were responsible for evaluating the effectiveness of the ATEs and Cerner could terminate an ATE's participation on a project.

18. Defendants typically scheduled ATEs as full-time employees.

19. Under Defendants' shared guidance, ATEs' primary duty was to provide first-line troubleshooting relating to the implementation of the software system. For example, Plaintiff was assigned to the radiology units within Hershey Medical Center and was tasked with providing direct interaction with the healthcare organization's employees to help them use the software.

20. Under Defendants' shared guidance, ATEs' other duties included reinforcing training, providing At-The-Elbow support <u>without</u> touching the mouse or keyboard, <u>not</u> teaching the staff any new things or tout better ways elsewhere and <u>not</u> providing any sort of patient care.

21. Under Defendants' shared guidance, ATEs had little discretion in the performance of their job and worked within closely-prescribed limits provided by Defendants. More complex technical issues were escalated to the next level.

22. Under Defendants' shared guidance, ATEs' primary duties: were not related to the management of the business operations of Defendants or their customers, did not require the use of discretion and independent judgment with respect to matters of significance, did not involve the performance of work requiring advanced knowledge in a field of science or learning and did not involve work requiring invention, imagination, originality, or talent in a recognized field of artistic or creative endeavor.

23. Under Defendants' shared guidance, ATEs were not employed as computer systems analysts, computer programmers, software engineers, or similarly skilled computer employees.

6

24. Despite the fact that ATEs did not meet any test for exemption, Defendants failed to pay ATEs the requisite overtime rate of 1½ times their regular rate for hours worked over 40 per week. Rather, Defendants paid ATEs their regular straight, hourly rate for time worked over 40 hours per week that was recorded by Defendants and nothing for the non-billable work they were encouraged, suffered and permitted to perform.

25. Defendants paid all hours worked, including all hours over 40 per workweek, at a standard straight-time hourly rate of pay.

26. Defendants did not keep accurate time records of all the work ATEs performed on a daily basis. Rather, ATEs were required to record only their scheduled work hours on Defendants' Paylocity system.

27. Defendants knew that ATEs were routinely working more than 40 hours per week, because they actively encouraged, suffered, permitted and/or directed ATEs to perform such work.

28. Defendants knew that they were not properly compensating ATEs, because these employees' timesheets clearly indicate that they routinely worked more than 40 hours per week, but were not receiving any wages calculated at an overtime premium rate.

## FLSA COLLECTIVE ACTION ALLEGATIONS

29. Plaintiff brings his FLSA claim on an opt-in, collective basis pursuant to 29 U.S.C. § 216(b) for himself and all people who have worked for Defendants as an ATE, or in any other similarly-titled, hourly-paid position, during the maximum limitations period (the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

30. Plaintiff belongs to the FLSA Collective, because he was employed by Defendants during the relevant period, was routinely suffered or permitted to work more than 40 hours per week and was not paid an overtime premium rate for time worked over 40 hours per week.

7

31. The FLSA Collective is "similarly situated," as defined by 29 U.S.C. § 216(b), because its members worked under similar terms and conditions, in similar jobs and were subjected to the common policies and practices described herein.

32. Plaintiff and the FLSA Collective do not meet any test for exemption under the FLSA.

33. Although Plaintiff and the Collective members may have had different job titles and/or worked in different locations throughout the relevant period, this action may be properly maintained as a collective action because:

   a. Plaintiff and the Collective members were all paid an hourly rate of pay;

   b. Plaintiff and the Collective members worked in excess of 40 hours per week;

   c. Defendants encouraged, suffered and/or permitted Plaintiff and the Collective members to perform non-billable work without pay;

   d. Regardless of their job title or location, Defendants did not pay Plaintiff and the Collective members an overtime premium of 1½ times their regular hourly rate for all time worked in excess of 40 hours per week; and

   e. Defendants maintained common timekeeping and payroll systems and policies with respect to Plaintiff and the Collective members, regardless of their job title or location.

34. Plaintiff estimates that the FLSA Collective, including both current and former employees over the relevant period, will include at least 100 members. The precise number of FLSA Collective members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from the Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

Case 1:19-cv-06458-YK Document 21 Filed 03/14/19 Page 8 of 16

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

35. Plaintiff brings her PMWA claim on an opt-out, class action basis pursuant to Fed. R. Civ. P. 23 for herself and all people who have worked for Defendants as an ATE, or in any other similarly-titled, hourly-paid position in Pennsylvania during the maximum limitations period without receiving all overtime wages due for all overtime hours they worked (the "PA Class"). Plaintiff reserves the right to amend this definition as necessary.

36. Plaintiff is a member of the PA Class because he worked as an hourly-paid ATE in Pennsylvania during the relevant period and was not paid overtime wages due for overtime hours he worked.

37. Class treatment of Plaintiff's PMWA claim is appropriate because the PA Class satisfies the requirements of Fed. R. Civ. P. 23.

38. The PA Class is so numerous that joinder of all its members would be impracticable. Defendants employed over 40 people who fit the PA Class definition, meaning that joining all of their claims would be impracticable.

39. Plaintiff's claims are typical of the claims belonging to the PA Class. Plaintiff is similarly-situated to the PA Class because he worked for Defendants under the common policies and procedures identified above, and was denied legally-required wages for his work as a result of Defendants' common course of wrongful conduct.

40. There are material questions of law or fact common to the members of the PA Class because, as discussed throughout this filing, Defendants engaged in a common course of conduct that violated their legal rights. The legality of Defendants' policies will be demonstrated by applying generally applicable legal principles to common evidence. Any individual questions

9

Plaintiff's claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

   a. whether Defendants subjected the PA Class to materially-identical timekeeping and compensation policies;

   b. whether Defendants encouraged, suffered and/or permitted the PA Class to perform non-billable work without pay;

   c. whether Defendants maintain any policies or procedures to ensure that the PA Class was properly paid for all hours worked;

   d. whether Defendants denied the PA Class overtime premium wages owed under the PMWA; and

   e. whether Defendants should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

41. Plaintiff will fairly and adequately protect the interests of the PA Class because: there is no apparent conflict of interest between Plaintiff and the PA Class; Plaintiff's counsel have successfully prosecuted many complex class actions, including state-law wage and hour class actions, and will adequately prosecute these claims; and Plaintiff has adequate financial resources to assure that the interests of the PA Class will not be harmed because her counsel has agreed to advance the costs and expenses of litigation on the Class' behalf contingent upon the outcome of this litigation consistent with Pa. R. Prof. Conduct 1.8(e)(1).

42. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy because issues common to the PA Class predominate over any questions affecting only individual members; no difficulties are likely to be encountered in the management of this litigation as a class action; and the claims addressed in this Complaint are not too small to justify the expenses of class-wide litigation, nor are they likely to be so substantial as to require the litigation of individual claims.

43. Allowing Plaintiff's PMWA claim to proceed as a class action will be superior to requiring the individual adjudication of each PA Class member's claim, since requiring more than 100 hourly-paid employees to file and litigate individual wage claims will place an undue burden on the PA Class members, Defendants and the Courts. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually. Moreover, as the damages suffered by each PA Class member are relatively small, the expenses and burdens associated with individual litigation would make it prohibitively impractical for them to bring individual claims. Further, the presentation of separate actions by individual PA Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of the PA Class members to protect their interests.

44. Allowing Plaintiff's claims to proceed in a class action setting is also appropriate because Pennsylvania's wage laws expressly permit private class action lawsuits to recover unpaid regular and overtime wages.

### COUNT I
### VIOLATION OF THE FLSA
### (For Plaintiff and the FLSA Collective)

45. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

46. Defendants are "employers" as defined by 29 U.S.C. § 203(d).

47. Plaintiff and the FLSA Collective are "employees" as defined by 29 U.S.C. § 203(e)(1) and are not exempt from the FLSA's protections for any reason.

48. The wages Defendants pay to Plaintiff and the FLSA Collective are "wages" as defined by 29 U.S.C. § 203(m).

49. Defendants are an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

50. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce employers' failure to comply with the FLSA's requirements.

51. Throughout the relevant period, Defendants have been obligated to comply with the FLSA's requirements, Plaintiff and the FLSA Collective have been covered employees entitled to the FLSA's protections, and Plaintiff and the FLSA Collective have not been exempt from receiving wages required by the FLSA for any reason.

52. 29 U.S.C. § 207(a)(1) requires employers to pay their employees an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

53. Defendants have intentionally violated this provision of the FLSA with respect to the FLSA Collective by maintaining common timekeeping and compensation policies and practices that include routinely failing to track the hours the PA Class members actually worked and suffering or permitting Plaintiff and the FLSA Collective to work overtime hours per week without paying them overtime wages for these hours.

54. By engaging in this conduct, Defendants have acted with willful and/or reckless disregard for the FLSA Collective members' rights under the FLSA.

55. Plaintiff and the FLSA Collective have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime premium wages

owed for overtime-eligible work they performed and from which Defendants derived a direct and substantial benefit.

56. For all the reasons stated above, Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. §216(b).

## COUNT II
## VIOLATION OF THE PMWA
## (For Plaintiff and the PA Class)

57. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

58. The unpaid wages at issue in this litigation are "Wages" as defined by PMWA § 3(d).

59. Defendants are "Employers" as defined by PMWA § 3(g).

60. Plaintiff and the Pennsylvania Class members are "Employees" as defined by PMWA § 3(h).

61. PMWA Section 4(c) requires employers to pay their employees overtime compensation of "not less than one and one-half times the employee's regular rate" for all hours worked over 40 in a given workweek. Under the PMWA, overtime is calculated based on the number of hours worked in a "workweek", defined in controlling regulations as "a period of 7 consecutive days". *See* 34 Pa. Code § 231.42.

62. PMWA § 8 requires employers to "keep a true and accurate record of the hours worked by each employee and the wages paid to each."

63. PMWA § 13 expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the PMWA's requirements and provides that an agreement

13

between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

64. The PMWA does not contain an exemption to the overtime requirements of § 4(c) for any type of computer employee. *See* PMWA § 333.105.

65. Throughout the relevant period, Defendants were obligated to comply with the PMWA's requirements, Plaintiff and the Pennsylvania Class members were covered employees entitled to the PMWA's protections, and Plaintiff and the Pennsylvania Class members were not exempt from receiving wages required by the PMWA for any reason.

66. Defendants have intentionally violated these provisions of the PMWA by maintaining common timekeeping and compensation policies and practices that include routinely failing to track the hours the PA Class members actually worked and suffering or permitting Plaintiff and the FLSA Collective to work overtime hours per week without paying them overtime wages for these hours

67. By engaging in this conduct, Defendants have acted with willful and/or reckless disregard for Plaintiff's and the PA Class members' rights under the PMWA.

68. There is no language in the PMWA, no exception to the PMWA or its enabling Regulations, or any applicable provision elsewhere in Pennsylvania law that permits Defendants to avoid paying Plaintiff and the PA Class for their overtime work, so Defendants have no good faith justification or defense for failing to pay Plaintiff and the PA Class members all wages mandated by the PMWA.

69. Defendants' failure to pay Plaintiff and the PA Class all wages owed for their meal break work violates the PMWA and has caused them to suffer economic harm.

70. Plaintiff and the PA Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime premium wages owed for overtime-eligible work they performed and from which Defendants derived a direct and substantial benefit.

WHEREFORE, Plaintiff respectfully prays for an Order:

a. Certifying this matter to proceed as a collective action with respect to Count I and as a class action with respect to Count II;

b. Approving Plaintiff as an adequate Class representative;

c. Appointing Stephan Zouras, LLP to serve as Class Counsel;

d. Finding Defendants willfully violated the applicable provisions of the FLSA and PMWA by failing to pay all required overtime wages to Plaintiff and the FLSA Collective and PA Class members;

e. Granting judgment in favor of Plaintiff and the FLSA Collective and PA Class members against Defendants, and each of them, jointly and severally, on Counts I and II;

f. Awarding all available compensatory damages in amounts to be determined;

g. Awarding all available liquidated damages in amounts to be determined;

h. Awarding pre-judgment interest on all compensatory damages due;

i. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

j. Awarding equitable and injunctive relief precluding the continuation of policies and practices pled in this Complaint;

k. Awarding any further relief the Court deems just, necessary and proper; and

l. Maintaining jurisdiction over this action to ensure Defendants' compliance with the foregoing.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in the above-captioned matter.

                                                          Respectfully Submitted,

Dated: March 14, 2019                 */s/ David J. Cohen*
                                                   David J. Cohen
                                                   **STEPHAN ZOURAS, LLP**
                                                   604 Spruce Street
                                                   Philadelphia, PA 19106
                                                   215-873-4836
                                                   312-233-1560 *fax*

                                                   Ryan F. Stephan
                                                   James B. Zouras
                                                   **STEPHAN ZOURAS, LLP**
                                                   100 North Riverside Plaza, Suite 2150
                                                   Chicago, Illinois 60606
                                                   312-233-1550
                                                   312-233-1560 *fax*

                                                   *Attorneys for Plaintiff*